MARK BATES

*v.*

HARRY WOODS.

*Opinion filed December 22, 1906—Rehearing denied Feb. 7, 1907.*

1. GAMBLING CONTRACTS—*when contract creates an option.* A mere written offer to make a contract to sell a commodity at a certain price, to be delivered at a specified time, is not a contract, and does not, of itself, create an option; but when there is added a clause by which, for a valuable consideration, the promising party agrees to leave the offer open for acceptance until a certain time, an option is thereby created.

2. SAME—*contract construed as being within prohibition of the statute.* An offer "to contract" for the sale to a certain person of a specified quantity of a commodity at a specified price, to be delivered at a certain time in the future, coupled with a promise, for a valuable consideration, to keep the offer open until a certain time, is within section 130 of the Criminal Code, prohibiting gambling contracts, since, upon acceptance, the promisor would have no alternative but to enter into a contract in the terms specified in the offer.

3. SAME—*contract within intention of statute against gambling contracts is within statute.* A contract which is within the mischief which section 130 of the Criminal Code, prohibiting gambling contracts, was intended to remedy is within the meaning of the statute, even though not within the letter.

4. SAME—*section 130 of Criminal Code construed.* The words "sell or buy," used in section 130 of the Criminal Code, which makes it illegal for any person "to have or give to himself or another the option to sell or buy, at a future time, any grain or other commodity," etc., mean "sell or buy," and will not be limited to the meaning of "deliver or receive."

5. SAME—*when contract creating an option is not within prohibition of gambling contract.* A contract by which, as merely incidental to a legitimate business transaction, an option is given to do a certain thing is not within the meaning of the statute against gambling contracts, there being no attempt to use the contract as a cover for a wager on the price of a commodity.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

D. MONCRIEFFE KIRTON, for plaintiff in error:

The offer in question having been accepted while still open, the defendant thereby became bound to make the contract specified in the offer. *DeRutte* v. *Maldraw,* 16 Cal. 513; 1 Parsons on Contracts, 498; *Schlee* v. *Guckenheimer,* 179 Ill. 597; *Kantzler* v. *Bensinger,* 214 id. 589; *Dickinson* v. *Dodge,* 2 Ch. Div. 472.

A man may as well bind himself to make a contract as bind himself by contract. *DeRutte* v. *Maldraw,* 16 Cal. 513.

The contract dates from the acceptance and not from the date of the offer. 1 Addison on Contracts, 18.

Where an offer has been accepted it ripens into a contract. *Railroad Co.* v. *Bartlett,* 57 Mass. 224.

An offer, as in this case, is not a contract for an option under the statute. To constitute such there must be a contract giving the option to deliver or not deliver the thing sold or to receive or not to receive the thing bought. Here there is no such contract. *Preston* v. *Smith,* 156 Ill. 359; *Lumber Co.* v. *Coal Co.* 160 id. 91; *Schlee* v. *Guckenheimer,* 179 id. 597; *Kantzler* v. *Bensinger,* 214 id. 589.

The right, privilege or option to elect to accept or not accept an offer is not a contract for an option, within the statute, and an offer with a promise, supported by a consideration, to leave the offer open for acceptance for a specified time is valid and does not contravene the statute. *Schlee* v. *Guckenheimer,* 179 Ill. 597; *Kantzler* v. *Bensinger,* 214 id. 589; 1 Benjamin on Sales, sec. 50; 1 Parsons on Contracts, 498; 1 Addison on Contracts, 17.

H. R. STEWART, for defendant in error:

A promise, for a sufficient consideration, to leave an offer to make a contract open for acceptance for a specified time is a lawful and binding contract if it be not prohibited by the statute, and such a promise cannot be withdrawn by the promisor or offerer during the time limited for its accept-

ance. Bishop on Contracts, sec. 325; *Burton* v. *Shottell,* 13 Bush, 271; *Tucker* v. *Lawrence,* 56 Vt. 467; 1 Addison on Contracts, (Abbott's notes,) 17; *Souffrain* v. *McDonald,* 27 Ind. 269; *House* v. *Jackson,* 24 Ore. 89; *Willard* v. *Tayloe,* 8 Wall. 557; *Railroad Co.* v. *Bartlett,* 3 Cush. 224; *Hayes* v. *O'Brien,* 149 Ill. 403.

An option contract, within the meaning of the common law and the statute, is a contract,—*i. e.,* an agreement made for a consideration,—by which one person agrees with another person that the latter shall have a right to buy or sell certain property at a fixed price within a certain time. *Black* v. *Maddox,* 104 Ga. 157; *Ide* v. *Leiser,* 10 Mont. 5; *Harding* v. *Gibbs,* 125 Ill. 85; *Schneider* v. *Turner,* 27 Ill. App. 220; 130 Ill. 28; *Seymour* v. *Howard,* 51 Ill. App. 384; *Coleman* v. *Applegarth,* 68 Md. 21; 21 Am. & Eng. Ency. of Law, (2d ed.) 924; *Litz* v. *Goosling,* 21 L. R. A. 128; 1 DosPassos on Stockbrokers, (2d ed.) 602.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Mark Bates, the plaintiff in error, brought suit in assumpsit in the superior court of Cook county against Harry Woods, the defendant in error, to recover damages alleged to have been sustained by the refusal of Woods to make a contract with Bates for the sale to the latter of 60,000 bushels of regular contract wheat on the board of trade of the city of Chicago at 82⅞ cents per bushel, the wheat to be delivered during the month of December, 1905.

The declaration, consisting of one special count, alleges that on September 13, 1905, the plaintiff and the defendant were members of the board of trade of the city of Chicago, engaged in making contracts for the purchase and sale of grain for actual future delivery; that on September 13, 1905, Woods made to Bates a certain written offer in the words and figures following:

"CHICAGO, *Sept. 13, 1905.*

"I, Harry Woods, hereby offer to contract for the sale to Mark Bates of 60,000 bushels of regular contract wheat on the board of trade of the city of Chicago at 82⅞ cents per bushel, same to be delivered in the month of December, 1905.     HARRY WOODS.

"In consideration of $60 I promise to leave the above offer open for acceptance until the hour of one o'clock and fifteen minutes P. M., September 14, 1905.     HARRY WOODS."

—that on September 14, 1905, at the hour of 1:14 P. M., and while said offer was still open, Bates accepted said offer, duly notified Woods of such acceptance, and requested Woods to make the contract as specified in said offer, but that Woods failed and refused to make said contract with Bates and refused to abide by said offer; that at the time Woods was notified of the acceptance of said offer, and at the time he refused to make said contract in compliance with that offer, the market price of contract wheat for delivery in the month of December, 1905, in the open market on said board of trade, was 85¼ cents per bushel; that by reason of the refusal of Woods to abide by his offer and by reason of his refusal to make the contract, Bates was compelled to, and did, on said board of trade, in the open market, contract for the sale to himself of 60,000 bushels of regular contract wheat for actual delivery in the month of December, 1905, at 85¼ cents per bushel; that by reason of the premises Woods became, and still is, indebted to Bates in the sum of $1500, and being so indebted, promised, etc. To this declaration Woods filed a general demurrer, which the court overruled, and, the defendant standing by his demurrer, the court rendered judgment for $1425 and costs in favor of Bates. Woods sued out a writ of error from the Appellate Court for the First District, and that court reversed the judgment of the superior court without remanding the cause. Bates has brought the cause to this court by writ of error.

The only question presented by the briefs and arguments in this case is whether the instrument of September 13, 1905,

above set out, is in violation of section 130 of the Criminal Code of this State, that section being as follows:

"Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain, or other commodity, stock of any railroad or other company, or gold, or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts to do so in relation to any of such commodities, shall be fined not less than $10 nor more than $1000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

It is first urged by plaintiff in error that the instrument in question was not a contract, but was merely an offer to make a contract, until it was accepted by Bates on September 14, 1905, and that when it became a contract by such acceptance it was not a contract for an option, but was an absolute agreement between the parties to enter into a contract for the absolute sale from Woods to Bates of 60,000 bushels of wheat at 82⅞ cents per bushel, delivery to be made in December, 1905.

The instrument in question consists of two parts: First, an offer by Woods to enter into a contract with Bates for the sale of wheat to the latter, the terms of such contract being specified in such offer; and second, an agreement on the part of Woods, for a valuable consideration, to keep the offer open until a certain time in the future. The first part of the instrument alone, without acceptance, would not constitute a contract, but the first part and second part taken together clearly amounted to a contract by which Bates was given an option either to enter into a contract for the purchase of wheat by him at a specified price, or not, as he chose, at any time before 1:15 o'clock in the afternoon of September 14, 1905.

An option is a right acquired by contract to accept or reject a present offer within a limited or reasonable time in

the future. (21 Am. & Eng. Ency. of Law,—2d ed.—924.) In such contract two elements exist: First, the offer to sell, which does not become a contract until accepted; second, the completed contract to leave the offer open for the specified time. *Black* v. *Maddox,* 104 Ga. 157; *Ide* v. *Leiser,* 10 Mont. 5.

It is apparent that in order to sustain the contention of the plaintiff in error, to the effect that the instrument in question did not amount to a contract but was a mere offer which did not become a contract until accepted, it is necessary to wholly ignore the second part of that instrument. ·It is the agreement by Woods, for a consideration of $60, to leave the offer open for a limited period, which creates the option and makes of the instrument a contract, and that portion cannot be ignored in determining the character of the instrument. The rule is, that if there is an offer by one to do a certain thing, and a promise on his part, without any valuable consideration therefor, to leave the offer open for a limited period, no contract is thereby created, because one of the essential elements of a contract, viz., the consideration, is lacking, but that where there is a valuable consideration for the promise to leave the offer open for a limited period a contract arises, whereby one acquires a right to accept or reject the offer within the time limited,—or, expressed in words of the same meaning, a contract arises whereby one acquires an option. *Hayes* v. *O'Brien,* 149 Ill. 403.

It follows that the instrument of September 13, 1905, signed by Woods, was a contract giving to Bates the option to enter into a contract for the purchase of 60,000 bushels of wheat at 82⅞ cents per bushel, delivery to be made during December, 1905.

It is next contended that the instrument did not give to Bates the option to buy at a future time the 60,000 bushels of wheat, but only gave him the right to enter into a contract for the purchase of the wheat, wherefore the contract does not come within the prohibition of section 130, *supra.*

To say that the statute does not prohibit contracts such as the one now before us is to hold that the evils sought to be remedied by its enactment may be continued by the use of a mere device, whose plain object is to avoid the provisions of the statute.   The terms of the contract for the sale of the wheat which Woods agrees to make at the option of Bates are all contained in the contract of September 13, 1905.   If Bates avails himself of the option, accepts the offer and demands the execution of the contract provided for therein, Woods has no alternative but to enter into a contract for the sale of the wheat upon the terms specified in the offer or to respond in damages if the contract is not within the statute, the measure of damages being the difference between the price mentioned in the contract of September 13, 1905, and the market price of wheat at the time Woods refuses to enter into such contract.  As to the consequences attendant upon a breach of such a contract as that of September 13, they are no different from those which would be attendant upon a breach of a contract which, for a valuable consideration, gave to Bates until 1:15 o'clock P. M. of September 14, 1905, the option to buy 60,000 bushels of wheat at 82⅞ cents per bushel, delivery to be made in December, 1905. Clearly such an option as that last referred to would be in violation of section 130 of the Criminal Code.  *Schneider v. Turner,* 130 Ill. 28.

The contract which was held to be in violation of section 130, *supra,* in the case last cited was as follows: "In consideration of one dollar ($1.00) and other valuable considerations, receipt of which is hereby acknowledged, I hereby agree to sell to George Schneider, Walter L. Peck and Ferd W. Peck seventeen hundred and eighty-six (1786) · shares of the capital stock of the North Chicago City railway at six hundred dollars ($600) per share, if taken on or before the 15th day of December, 1885." The contract in the case at bar, in effect, reads: In consideration of $60 I hereby agree to contract for the sale to Mark Bates of 60,000

bushels of regular contract wheat on the board of trade of the city of Chicago at 82⅞ cents per bushel, same to be delivered in the month of December, 1905, provided, however, this agreement be accepted by him on or before 1 :15 o'clock P. M. of September 14, 1905. Obviously, the only difference between the contract in *Schneider* v. *Turner, supra,* and the contract in the case now before us is, that in the former the offer was to sell the shares of stock for a certain price provided the offer should be accepted within the specified time, while in the latter the offer is to contract to sell the grain at a certain price provided the offer be accepted within the time specified.

That portion of the statute which renders void contracts made in violation thereof is remedial in its character and should be liberally construed. In *People* v. *Harrison,* 191 Ill. 257, we said: "A thing within the intention is regarded as within the statute though not within the letter. * * * The intention is to be gathered from the necessity or reason of the enactment, and the meaning of words enlarged or restricted according to the true intent." A contract such as the one in this case is clearly within the mischief which the statute was intended to remedy, and should, we think, be regarded as within the enactment.

Plaintiff in error contends that the word "sell," as used in section 130, *supra,* means "deliver," and that the word "buy," as therein used, means "received;" that so construed the statute merely prohibits one from contracting to have or give to himself or another the option to deliver or receive, at a future time, any grain, etc.; that the contract in the case at bar did not give to Bates the option of receiving the grain, and is therefore not prohibited by the statute. As we understand the argument of counsel for plaintiff in error in this regard it is a repetition of the contention made in *Schneider* v. *Turner, supra,* which is there stated in the following words.: "It is insisted that by the prohibition of the statute the legislature only intended to make unlawful such option

contracts as contemplate a settlement by differences; that to come within the inhibition of section 130 the contract must be a gambling contract; that the option here meant is the option or right to elect whether to accept or deliver the stock or other commodity, or pay the difference between the contract price and the market price when the same should be accepted or delivered under the terms of the agreement." It was there held, however, that such was not the purpose of the statute; that the statute was intended to prohibit contracts which gave an option to *sell* or *buy*, at a future time, grain or other commodity, and which, but for the statute, would be valid contracts.

The cases of *Schlee* v. *Guckenheimer*, 179 Ill. 593, and *Kantzler* v. *Bensinger*, 214 id. 589, which are relied upon by plaintiff in error in support of his contention that the contract in the case now before us does not come within the prohibition of the statute, are not in point. In each of those cases the principal subject matter of the contract was a legitimate business transaction and the option contained in the contract was but incidental to the main transaction. It was apparent from the contract itself that it was not a mere cover or disguise for a wager on the price of the commodity for the purchase or sale of which the option was given. The evil sought to be remedied by the statute did not exist in such contracts as these, and it has therefore been uniformly held that the prohibition of the statute does not extend to them. *Minnesota Lumber Co.* v. *Coal Co.* 160 Ill. 85; *Wolf* v. *National Bank of Illinois*, 178 id. 85; *Ubben* v. *Binnian*, 182 id. 508; *Loeb* v. *Stern*, 198 id. 371; *Osgood* v. *Skinner*, 211 id. 229.

The only purpose of the contract in the case at bar was to give an option. It belongs to the class of cases against which the statute is directed. It is therefore illegal and void, and no rights can arise out of it enforcible in the courts of this State.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*