THE CONSOLIDATED COAL COMPANY OF ST. LOUIS, Appellee, *vs.* THE JONES & ADAMS COMPANY, Appellant.

*Opinion filed February 20, 1908.*

1. CONTRACTS—*term "f. o. b. cars" furnishes no implication as to which party shall furnish cars.* Where a contract for the sale and delivery of coal is silent as to which party shall furnish cars, a provision that the coal shall be furnished "f. o. b. cars at the mine" has no bearing upon the matter of who shall furnish cars, and the construction placed thereon by the parties will control.

2. SAME—*evidence showing construction placed by parties upon provision is competent.* In an action for breach of a contract to deliver coal, which the defendant ascribes to its inability to obtain cars, proof that the defendant took upon itself the burden of furnishing cars, the contract being silent upon that point, and that it never asked the purchaser to furnish cars or offered to make deliveries if he would do so, is competent, as showing a construction of the contract by the parties.

3. SAME—*what provision of contract is not a gambling option.* A provision in a contract for the sale and delivery of coal, by which the seller agreed to furnish a minimum of 125 tons per day and a maximum of 200 tons per day, is not, as to the 75 tons range from minimum to maximum, a gambling option, but merely limits the rights and obligations of the parties to the needs of the purchaser, as an incident to the main transaction.

4. SAME—*evidence of market price of coal during term covered by contract is competent—effect of "corner" on market.* In an action for breach of a contract for the sale and delivery of coal, evidence as to the market value of coal for each month of the time

covered by the contract is competent, and the question whether such price was the result of an unlawful combination of coal dealers, as testified to by the defendant, or was due to an unusual demand for coal, as claimed by the plaintiff, is a question for the jury.

5. SAME—*provision of a contract relating to strikes, excusing performance, construed.* A stipulation in a contract for the sale and delivery of coal by a mining company which provides that the seller shall not be required to furnish the coal when prevented by strikes, refers to such strikes as are the proximate cause why the seller cannot handle the product of its mine and not to strikes in some distant part of the country, which, in conjunction with other causes, may remotely affect the business of the seller.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

RUNNELLS & BURRY, and HAMILTON & CATRON, for appellant.

LAWRENCE & FOLSOM, FORMAN & WHITNEL, and PATTON & PATTON, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellee recovered in an action of assumpsit in the circuit court of Sangamon county a judgment against appellant for $7977.63, which the Appellate Court affirmed, and an appeal is now prosecuted to this court.

The action was for the breach of a contract for the sale of coal, whereby appellant undertook to furnish to appellee a minimum of 125 tons per day and a maximum of 200 tons per day of mine run or lump coal from its mine at Springfield, Illinois, for nine months, commencing July 1, 1902, "at the following prices f. o. b. mines: lump, $.95 per ton; mine run, $.85 per ton," shipments of either grade to be made as ordered by appellee, within the minimum and maximum limits. It was stipulated in the contract that appel-

lant should not be required to furnish coal "during any portion of the time when prevented by strikes, unavoidable accidents or other causes beyond its control, from handling the product of the mine at which the coal herein provided for is produced." The various counts of the declaration allege the ordering of shipments under the contract and the failure and refusal of the appellant to deliver the coal.

Appellant contends that to the extent of the 75 tons per day which appellee was given the right to order shipped in excess of 125 tons the contract was void, the option thereby given being a gambling option, in violation of section 130 of chapter 38 of the Revised Statutes; that appellant was prevented by strikes from handling the product of its mine, and that the failure to deliver the coal was due to the want of cars at·appellant's mine, which it was the duty of the appellee to furnish.

The parties are agreed that the words in the contract, to furnish coal "f. o. b. mines," mean that appellant was to deliver the coal on board cars at its mine without any cost to appellee other than the price named.  Different courts have held different views as to whether the buyer or the seller is bound to furnish cars under such a contract containing no express stipulation on the subject.  (*Hocking* v. *Hamilton,* 158 Pa. St. 107; *O'Brien Lumber Co.* v. *Wilkenson,* 117 Wis. 468.)  The question has never been determined by this court.  (*Harman* v. *Washington Fuel Co.* 228 Ill. 298.)  In *Consolidated Coal Co.* v. *Schneider,* 163 Ill. 393, the court declared that a contract to furnish coal f. o. b. cars at a mine was silent in regard to the party who should furnish the cars, and that the agreement to furnish coal free on board the cars had no bearing on the question of whose duty it was to furnish the cars.  The court adopted the construction placed upon the contract by the parties themselves, as shown by the evidence.

There was evidence tending to show that after the execution of the contract the appellant took upon itself the

burden of furnishing cars; that it ascribed its failure to make deliveries to its inability to procure cars; that it never demanded that appellee should furnish cars, or complained that it did not do so, or offered to deliver if it would do so. This evidence tending to show the construction the parties placed upon the contract was competent, and it was therefore not error to refuse the instruction to find a verdict for the defendant.

The provision of the contract fixing a minimum and maximum quantity for daily delivery was not void, as a gambling option. This was an ordinary business transaction having no feature of a gambling contract. The intention was not to contract for a mere option to buy coal in the future, but to limit the rights and obligations of the parties with reference to the needs of the purchaser. "The principal subject matter of the contract was a legitimate business transaction and the option contained in the contract was but incidental to the main transaction." *Bates* v. *Woods,* 225 Ill. 126; *Minnesota Lumber Co.* v. *Whitebreast Coal Co.* 160 id. 85; *Osgood* v. *Skinner,* 211 id. 229; *Schlee* v. *Guckenheimer,* 179 id. 593; *Kantzler* v. *Bensinger,* 214 id. 589.

It is contended that there was no competent evidence of the market price of coal in Springfield at the times when the contract was to be performed. Witnesses testified to the market price during September and each succeeding month covered by the contract. Evidence was introduced by appellant to show that an unlawful combination of coal operators and dealers was engaged, during this period, in raising and regulating the prices of coal in Chicago and the surrounding territory; that such combination had succeeded in cornering the market and was able to compel consumers to pay any price it chose to demand, and that the prices were higher and more fluctuating than ever before known. On the other hand, it was contended that this combination did not affect the price of coal at Springfield, and that the scar-

city of coal in the west arising from the unusual demand for bituminous coal in the eastern markets occasioned by a strike of the anthracite coal miners was the cause of the high price. The evidence as to the market price was competent, and the determination of the question of fact by the jury and the Appellate Court is final.

Evidence was introduced showing that during the period covered by this contract an extensive strike existed among the anthracite coal miners of the country, and that a very serious shortage of cars was occasioned, in part, as a result of this strike. The court instructed the jury that such strike could not be considered as a strike within the terms of the contract exempting appellant from the requirement to furnish coal during any portion of the time when prevented from handling the product of the mine by strikes, unavoidable accidents or other causes beyond its control. The strikes intended by this provision to exempt appellant from the performance of its contract were such strikes as might be the proximate cause of preventing it from handling the product of its mine,—not such as indirectly and remotely, acting in conjunction with other and independent efficient causes, might affect the business of appellant and cause the handling of the product of its mines to be attended with inconvenience and difficulty. The jury was plainly instructed that if the appellant was prevented from furnishing coal by inability to obtain railroad cars, and if such lack of cars was beyond the control of appellant, then appellee could not recover on account of any coal the appellant was so prevented from delivering.

The action of the court in giving and refusing instructions was in accordance with the views herein expressed and was not in any respect erroneous.

The judgment is affirmed.            *Judgment affirmed.*