## Great Western Coal & Coke Company v. St. Louis & Big Muddy Coal Company.

## Gen. No. 13,793.

1. CONTRACTS—*what acceptance of proposition.* Held, that a letter set forth in the opinion was an unconditional acceptance of the offer in question in the case and effectuated a contract between the parties.

2. CONTRACTS—*when made by proposal and acceptance.* If a written acceptance of a proposition is ambiguous as to whether or not it imposes conditions not assented to by the purchaser, the contract will be deemed to have been made where the parties have, by their conduct, treated the acceptance as unconditional and as completing the contract.

3. MEASURE OF DAMAGES—*in action for breach of executory contract of sale.* The measure of damages in an action for breach by the vendee of an executory contract of sale is the difference between the contract price and the market value at the time and place of the breach.

Assumpsit. Error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Reversed and remanded. Opinion filed April 3, 1908. Rehearing denied April 17, 1908.

**Statement by the Court.** In an action of *assumpsit* brought in the Superior Court by the defendant in error against the plaintiff in error, the declaration avers that the parties entered into the following contract in writing:

"CHICAGO, February 19, 190

ST. LOUIS & BIG MUDDY COAL CO.

Carbondale Illinois.

GENTLEMEN: Confirming our conversation with Nat. J. Scott, wish to advise that we are prepared to accept ten cars daily of coal from you on the basis of $1.25 f. o. b. mines for ½ of this amount (mine run), and on the basis of $1.50 mines, for the remaining 50 per cent. of all equipment that we should furnish. It being understood that we agree to deliver cars to the Illinois Central Railroad Co. for the loading of this amount of coal upon their requisition, but that we are not to be held liable under this agreement for the failure of the Illinois Central to handle equipment offered them for their loading. This agreement to remain effective until April 1st, 1903.

Very truly yours,

GREAT WESTERN COAL & COKE CO.

Per W. S. Puffer, Pres.

Accepted with understanding that all of the coal is to be mine run.

ST. LOUIS & BIG MUDDY COAL CO.

Sam T. Brink, Prest."

—that although plaintiff was ready and willing, etc., to deliver ten cars of coal daily, yet the defendant did not order, furnish cars for, or accept said coal except seven carloads, but refused so to do, whereby plaintiff lost · divers gains and profits, to wit: $8,000 which would have accrued to it from the delivery of said coal. The defendant pleads *non assumpsit*. A trial resulted in a verdict and judgment thereon for the plaintiff for

$5,172.91, to reverse which the defendant prosecutes this writ of error.

B. H. CANBY and A. W. HOPE, for plaintiff in error.

A. D. GASH, for defendant in error.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The plaintiff in error contends that the proposition, or offer, of the plaintiff must be held an offer to furnish coal one-half of which was to be "mine run," and that therefore the words, "accepted with understanding that all of the coal is to be mine run," preceding the signature of the defendant, must be held a modification of plaintiff's offer or proposition, and not an acceptance thereof; that such modification was not assented to by the plaintiff, and that therefore the contract set up in the declaration was not proved.

We think that the words "mine run" in the sentence in the proposition, "we are prepared to accept ten cars daily of coal from you on the basis of $1.25 f. o. b. mines for ½ of this amount (mine run) and on the basis of $1.50 mines for the remaining 50 per cent." applies to all the coal mentioned, and not to one-half of it only, and that there is therefore no substantial difference between the proposition and the acceptance. But if it be assumed that the proposition is open to the construction that the words "mine run" apply to one-half of the coal only, it becomes material to inquire what was the construction placed upon the writing by the parties at the time. The evidence shows that the proposition of the plaintiff was in duplicate, and that both copies were delivered by plaintiff to Nathaniel J. Scott to be submitted to the defendant company; that he forwarded both copies to the defendant company at St. Louis; that one copy was returned to him with the acceptance thereof by the defendant above set forth; that he delivered the same to Mr. Puffer, the president of

the plaintiff company, who retained the same without objection to the form of the acceptance, and that both parties thereafter treated such proposition and acceptance as a contract.

We think that the contention that the contract was not proved cannot be sustained. The word "ton" is not in the contract, but we know that coal is usually sold by the ton, and we think that the contract must be held to be a contract for the purchase and sale of coal at $1.25 per *ton* for one half, and $1.50 per ton for the other half of the coal mentioned in the contract.

The defendant delivered to the Illinois Central Railroad Company only seven cars to be loaded with coal by the plaintiff for the defendant, and the coal loaded into those seven cars was all the coal which the defendant accepted from the plaintiff under the contract. The plaintiff could have mined and delivered all the coal it was required to deliver by the contract, and offered to deliver the same if cars were furnished in accordance with the provisions of the contract. When the defendant failed to deliver cars, the plaintiff did not each day mine and store up the coal the defendant was bound under the contract to accept, but reduced its output each day to the extent of the amount of coal the defendant was under the contract required to accept. That is, the plaintiff between February 19th and April 1, 1903, sold all the coal that it mined, but if the defendant had furnished the ten cars per day it would have mined ten cars of coal more each day, and delivered the same to defendant under the contract.

The president of the plaintiff company testified that plaintiff sold mine run coal at the mine after April 1, 1903, at eighty-five cents per ton. He also testified, on cross-examination, that the average market price of mine run coal at the mines from February 17th to April 1, 1903, was about $1.30 per ton. The court refused to permit the defendant to prove the market price of coal at the mines on different days between February 19th and April 1, 1903, and also, on the ob-

jection of the plaintiff, excluded proof offered of the average market price of coal at the mines between those dates. The recovery is based upon a difference between the contract price and a price of about ninety-eight cents per ton. The evidence shows that a miners' strike was settled March 26th, and that after that time the price of coal rapidly declined. There is no evidence that the market price of coal fell below $1.30 per ton until after March 26th, or that it was so low as ninety-eight cents per ton until after April 1st.

There is nothing in this case to take it out of the general rule for the recovery of damages for the breach of an executory contract of sale, that the measure of damages for such breach by the vendee is the difference between the contract price and the market price at the mine or times and place of the breach. The contract was not one for the manufacture and sale of a particular article or articles of a specified pattern, quality or kind, for which there is no general demand or market. The testimony of the president of the plaintiff was that the coal had a market value at the mines at the times when the coal was to be delivered. The defendant offered proof of such market value and the court excluded the proof.

In Consolidated Coal Co. v. Jones & Adams Co., 232 Ill. 326, which was an action by the vendee to recover damages of the vendor, damages for the breach of a contract by the latter to deliver certain specified quantities of coal daily for a period of seven months, it was held competent to prove the market price of coal during each month covered by the contract.

We think that the trial court erred in excluding the evidence of the market value of the coal, offered by the defendant, and that for such error the judgment of the Superior Court must be reversed and the cause remanded.

*Reversed and remanded.*