William D. Dreiske, Appellee, v. Davis Colliery Company, Appellant.

Gen. No. 15,016.

1. CONTRACTS—*effect of construction by parties.* If there is anything doubtful or ambiguous about a contract the construction and meaning put thereon by the parties will be accepted as the true construction where it is not inconsistent with the language used by the parties

2. CONTRACTS—*when not void for want of mutuality.* A particular contract in question in this case is considered and construed and held not void for want of mutuality.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed June 3, 1910.

ULLMAN & HOAG, for appellant.

LACKNER, BUTZ & MILLER, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The plaintiff had judgment below for $832.35 against the defendant, from which this appeal is taken by the defendant. The cause was submitted to the court without a jury on the following stipulation of facts:

"It is hereby stipulated and agreed by and between the parties hereto that on the 23rd day of January, 1904, the defendant, the Davis Colliery Company, was a corporation organized under the laws of the State of West Virginia for the purpose, among other things, of buying, selling, handling and dealing in coal, and that said company had an office in the City of Chicago, Illinois; that L. W. Ferguson was the western manager for said company, with full power and authority to transact all business for said company; that Wm. D. Dreiske, the plaintiff, was then engaged in the coal business under the name of Wm. D. Dreiske & Co., with a coal yard situated at Kedzie and Chicago avenues, Chicago, Illinois.

"It is further stipulated that on the 23rd day of January, 1904, the plaintiff and the defendant entered into a written instrument in words and figures as follows, viz.:

(Letterhead of Davis Colliery Company.)

'Chicago, Jan. 23, 1904.

Wm. D. Dreiske & Co.,
    377 N. Sawyer Ave.,
        Chicago, Ill.

Gentlemen:—

As per our conversation yesterday, it is understood that you are to allow us to store 100 cars of our Smokeless coal in your yard situated at Kedzie and Chicago Aves., we to pay

you 15 cents per ton for the use of your yard and also the weighing out of the coal as we may sell it. It is further understood that we are to remove the coal which we store in your yard, within ninety days from the time the last car is unloaded. You are also to give us what assistance you can as regards the teaming, and this Company will attend to the unloading of such coal, as far as getting labor and the paying off of said labor is concerned.

Yours very truly,<br>
L. W. Ferguson,<br>
Western Manager.

Shipment to be made at the
rate of 5 cars per 'day.
    Accepted:
        Wm. D. Dreiske & Co.'

"That said instrument was drawn up by the defendant, in typewriting, except the words 'shipment to be made at the rate of 5 cars per day' were added in the handwriting of L. W. Ferguson, and said instrument was signed by him as western manager for the defendant; and thereupon said instrument was accepted, in writing, by the plaintiff.

"It is further stipulated that on the 25th day of January, 1904, the defendant, pursuant to the terms of said contract, stored five carloads of its smokeless coal at the plaintiff's yard, situated at Kedzie and Chicago avenues, Chicago, Illinois; and thereafter the defendant stored at said yard of the plaintiff five carloads of its smokeless coal each day until a total of 562 tons of its smokeless coal had been delivered and stored at said yard; that said 562 tons of said coal remained in storage in said yard until the 10th day of April, 1905; that the defendant did not offer to deliver or store any further or additional coal at said yard; that the plaintiff reserved in its said coal yard sufficient space for the storage of 100 cars of smokeless coal of the defendant for a period of 110 days from the 25th day of January, 1904; that 37½ tons of the defendant's smokeless coal make one carload; that the plaintiff weighed out the coal stored in his yard by the defendant as the defendant sold same, and that plaintiff

maintained, during all the time that said coal of the defend-
ant remained in the plaintiff's yard, a scale for weighing
coal and a man to operate said scale; that the plaintiff gave
to the defendant what assistance he could as regards the
teaming.

"It is further stipulated that on February 8, 1904, Wm.
D. Dreiske & Co. advanced for the Davis Colliery Co., at its
special instance and request, for unloading charges, $6.16;
that on February 10, 1904, Wm. D. Dreiske & Co. paid car
service for Davis Colliery Co., at its special instance and re-
quest, $7; that on November 9, 1904, Wm. D. Dreiske &
Co. paid cartage charges for the Davis Colliery Co., at its
special instance and request, of $3.45; that on April 8, 1905,
Wm. D. Dreiske & Co. advanced for the Davis Colliery Co.,
at its special instance and request, for loading charges,
$90.22; that on March 7, 1905, Wm. D. Dreiske & Co. ad-
vanced for the Davis Colliery Co., at its special instance and
request, for Hiawatha smokeless coal, $9.50; that on April
8, 1905, Wm. Dreiske & Co. purchased of the Davis Colliery
Co. $153.38 worth of coal; that no payment has been made
by the defendant to the plaintiff."

No other evidence was offered or received.

Whereupon the defendant submitted certain propositions
of law, which it requested the court to hold, but the court
refused to hold said propositions of law, and refused, and
marked refused, each and all of said propositions of law.
Said propositions of law are in words and figures as follows,
to wit:

The court holds, as a matter of law, that the paper set out
in the stipulation of the facts herein, in words and figures
as follows, to wit:   (here follows a copy of said contract) is
unilateral and void for want of mutuality.

The court holds as a matter of law that the paper set out
in the stipulation of facts herein, in words and figures as
follows, to-wit: (here follows a copy of said contract) is not
a valid and enforceable contract.

The court holds, as a matter of law, that the paper set out
in the stipulation of facts herein, in words and figures as

follows, to wit:   (here follows a copy of said contract) is not enforceable against the defendant because the defendant in and by said paper did not agree to store any specific number of cars of coal in plaintiff's yard.

The court holds, as a matter of law, that the paper set out in the stipulation of facts herein, in words and figures as follows, to wit: (here follows a copy of said contract) is not a valid and enforceable contract insofar as it has not been executed.

The court holds as a matter of law, that the paper set out in the stipulation of facts herein, in words and figures as follows, to-wit: (here follows a copy of said contract) is unilateral and void for want of mutuality insofar as it has not been executed.

The propositions to be held as law presented to the court, and marked refused, present the question whether or not the contract sued on is unilateral and void for want of mutuality. This is the principal question presented by appellant as a ground of reversal of the judgment, and Higbie v. Rust, 211 Ill. 333, and Railway Co. v. Bagley, 60 Kans. 424, are cited and relied on.   In our opinion the contracts involved in these cases were dissimilar in this respect from the contract in this case.   The contention is that while the plaintiff agreed to allow defendant to store one hundred cars of coal in plaintiff's yard, the defendant did not agree to store that amount or any coal in the plaintiff's yard.

By the last clause of the contract the defendant agreed to make shipment of the coal at the rate of five cars per day. The language expressing this agreement is clear and not doubtful.   It is so clear that no room for construction is left. It means that the defendant should at once begin to ship coal to the plaintiff's yard and to continue shipments at the rate of five cars per day.   We think the terms of this clause, considered in connection with the preceding part of the contract, mean this and nothing else.   This was the meaning and construction put upon the contract contemporaneously with its execution as shown by the stipulated facts.   If there was anything doubtful or ambiguous about the contract, the

construction and meaning thus put upon it by the parties would be accepted as the true construction where it is not inconsistent with the language used by the parties. Consolidated Coal Co. v. Jones & Adams Co., 232 Ill. 326. Construed by what the parties did, the defendant was to begin shipping the coal immediately to plaintiff's yard at the rate of five cars per day, and these shipments were to continue until one hundred cars of coal had been shipped, which the plaintiff agreed to store in his yard for the defendant. Reading and considering the whole contract together, we think the defendant expressly agreed to store in plaintiff's yard one hundred carloads of coal and to pay therefor fifteen cents per ton for storing it and weighing it out as the defendant might sell it. And the plaintiff agreed to provide space for the storage of that amount of coal in his yard for the use of the defendant. We think the agreement to store one hundred cars of coal is implied necessarily in the contract. Minneapolis Mill Co. v. Goodnow, 40 Minn. 497; Minnesota Lumber Co. v. Coal Co., 160 Ill. 85. In the last cited case it is said: "A contract should be construed in such a way as to make the obligations imposed by its terms mutually binding upon the parties, unless such construction is wholly negatived by the language used." See also Nat. Furnace Co. v. Keystone Manf. Co., 110 Ill. 427; and Purcell Co. v. Sage, 200 id. 342. We think the contract was mutual and valid.

The defendant left its coal in plaintiff's yard for the full period of four terms of ninety days each. The compensation for storage of the coal by the terms of the contract was to be fifteen cents per ton for three months. Five hundred and sixty-two tons of coal were stored during all that period. The defendant admits that the item in the bill of particulars for storage for the first ninety days, $84.30, is correct, but contends that the trial court erred in allowing the same charge for each of the three periods of three months each following the first. We think the contention cannot be sustained. The items were properly allowed (Eppstein v. Kuhn, 225 Ill. 115), for there was an implied renewal of the contract for each three months, in the absence of any understanding to

the contrary. Mears v. O'Donoghue, 58 Ill. App. 345; Moline Plow Co. v. Booth, 17 *id.* 574.

As we have said above, we think the agreement of the defendant was to store one hundred cars of coal in plaintiff's yard, and to pay the plaintiff for that service fifteen cents per ton on one hundred carloads of coal. If this be the correct construction of the contract, the plaintiff was entitled to recover compensation according to the contract for the 3,188 tons which the defendant did not ship and store in plaintiff's yard. The plaintiff furnished the yard and facilities which he agreed to furnish in his contract, and he is entitled to the compensation provided in the contract, although the defendant did not avail itself of the privilege and service which it had contracted for. The court did not err in allowing item six of the account for fifteen cents per ton on 3,188 tons not stored.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

Mr. Justice Mack took no part in the decision of this case.