## Sterling-Midland Coal Company, Appellee, v. Great Lakes Coal & Coke Company, Appellant.

### Gen. No. 30,652.

1. SET-OFF, COUNTERCLAIM AND RECOUPMENT—*right of set-off based upon breach of independent written contract.* Damages are liquidated and a proper subject of set-off in an action upon a contract, where based upon the alleged breach by the plaintiff of an independent written contract to purchase from the defendant a certain quantity of coal, and the recovery sought is the difference between the contract and the market prices of such coal for the amount thereof as to which acceptance was refused.

2. SALES—*Uniform Sales Law as affecting right of seller to maintain claim of set-off based upon nonacceptance of goods sold by independent written contract.* In view of Cahill's St. ch. 121a, ¶ 67, stating the measure of damages for a breach by the vendee of a contract for the purchase of goods, and ¶ 79, defining "action" to include set-off, defendant in an action upon a contract may maintain a claim of set-off therein based upon a separate and distinct contract, where the defendant's claim for damages is measured by the difference between the contract and the market prices of the goods which plaintiff refused to accept.

3. CONTRACTS—*when merger of contracts for purchase of coal not shown.* Where an affidavit of set-off presented two contracts for the purchase of coal, one dated 19 days after the other but otherwise identical, a contention that the earlier contract was

merged in the former was held without merit as based upon the fallacious assumption that there could not be more than one live contract for coal between the parties at the same time.

4. CONTRACTS—*provision for maximum and minimum deliveries per week as avoiding contract for want of mutuality.* A contract for the purchase of coal providing that delivery should be from 18 to 30 cars per week "at the option of the seller" was not void for want of mutuality on the ground that there was no obligation on the part of the seller to ship any coal, a proper construction of the agreement being that the seller was obliged to deliver a minimum of 18 cars per week, but not more than 30 cars in any week.

MATCHETT, P. J., dissents.

Appeal by defendant from the Municipal Court of Chicago; the Hon. THEODORE F. EHLER, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Reversed and remanded. Opinion filed March 29, 1926. Rehearing denied April 12, 1926.

WINSTON, STRAWN & SHAW, for appellant; J. SIDNEY CONDIT and M. OGDEN WEST of counsel.

JOHN J. SHERLOCK and HAIGHT, ADCOCK, HAIGHT & HARRIS, for appellees; EDMUND D. ADCOCK, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Defendant by this appeal seeks the reversal of a judgment against it for $28,455.03 entered by the court after ruling on the pleadings.

Plaintiff claimed moneys due for various quantities and kinds of coal sold and delivered to defendant pursuant to certain written contracts between them. Defendant pleaded a set-off and by other pleas questioned the amount claimed by plaintiff to be due upon the contracts sued on. This amount was adjusted upon the hearing, but the court sustained plaintiff's motion to strike that paragraph of the affidavit of defense which claimed a set-off, and entered judgment for plaintiff.

The claim of set-off presented two written contracts

218     APPELLATE COURTS OF ILLINOIS.

Sterling-Midland Coal Co. v. Gt. L. C. & C. Co., 240 Ill. App. 216.

for the sale of coal by the defendant to plaintiff, separate and distinct from those sued upon by plaintiff, and defendant alleged that plaintiff failed and refused to accept delivery of approximately 105,640 tons of the coal contracted for, and asked for damages based upon the difference between the contract and market prices of this shortage, which was $73,948.

Plaintiff contends that the set-off was properly stricken under the rule that unliquidated damages growing out of an alleged breach of contract distinct from the contract sued upon and in no wise connected with it cannot be made the subject of a set-off, to which defendant replies that the damages claimed were not unliquidated, but were liquidated, citing *Kelley, Maus & Co. v. Caffrey*, 79 Ill. App. 278, in which the court said:

"When the damages can be determined by computing the difference between the contract price and the market value, they are not unliquidated damages. * * *

"The general trend and policy of legislation and of the decisions of courts in this country, is, to have adjusted, as far as practicable, in one and the same suit, all claims and counter-claims between the parties thereto. And that is as it should be. 'Set-offs are to be encouraged; they lessen the amount of litigation, by preventing circuity of action. There is no reason or propriety in driving these parties to cross-actions, and to compel the claims to be settled in two suits, when full and equal justice can be awarded to each of them in one suit.' The damages to appellant set out in the pleas of set-off are not unliquidated, and the demurrer to the last one of said pleas should have been overruled."

Plaintiff replies that it was held to the contrary in *Turnbull Joice Lumber Co. v. Chicago Lumber & Coal Co.*, 152 Ill. App. 347. Both these cases are in point on the facts and are in direct conflict in the conclusions

reached. No other case is cited and we have been unable to find any involving facts just like those before us in which the instant point was determined.

Generally speaking, unliquidated damages are such as rest in opinion only, and which cannot be ascertained by computation or calculation. If, however, there is data given from which damages can be ascertained by computation or calculation, they are liquidated. Ordinarily, damages for breach of a contract to deliver goods, where the plaintiff seeks to recover not only the difference between the contract price and the market price but also special damages including loss of profits, are unliquidated. Where, however, there is no claim for special damages but only for the difference between the contract and the market prices, we have data from which the damages can be determined by calculation and they should properly be defined as liquidated. 24 R. C. L. 60.

The claim of set-off here alleges the contract prices, the amount of coal plaintiff refused to accept, and the amount of resulting damages. Neither the contract prices, the amount of shortage, nor the market prices rest merely in opinion, but can be definitely ascertained. We have thus the data upon which to compute and determine the amount of damages by arithmetic and not by opinion only.

We are in accord with the statement in *Kelley, Maus & Co. v. Caffrey, supra,* that it is desirable, as far as practicable, to have adjusted in one suit all claims and counterclaims between the parties. Set-offs should be encouraged, and parties should not unnecessarily be driven to cross-actions to settle their claims when full justice can be done to each of them in one suit. We are led to our conclusion by the obvious desirability of such a policy, and in the absence of any decision of our Supreme Court to the contrary we hold that the damages claimed in this case are liquidated and a proper subject of set-off.

Defendant also says its claim can be set off by virtue of certain provisions of the Uniform Sales Act. Chapter 121a, Illinois Statutes (Cahill), paragraph 67, reads as follows:

"Action for damages for non-acceptance of the goods.

"(1)   Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for non-acceptance.   *   *   *

"(3)   Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Paragraph 79(1) reads:

"In this Act, unless the context or subject matter otherwise requires—

" 'Action' includes counterclaim, set-off and suit in equity."

These sections together seem to give a seller, where he may maintain an action for nonacceptance of goods, the right to maintain his claim by plea of set-off. This is the natural meaning of the language, and it requires some ingenuity to arrive at a contrary interpretation. Plaintiff argues that this construction would overthrow the established precedents as to set-offs, but, as we have seen, the decisions of this court are in direct conflict and the decisions of other States are in hopeless confusion. *Woodruff v. Garner*, 89 Am. Dec. 482. The conditions suggest the necessity of uniform legislation in this respect, and we are impressed by the language of Mr. Justice Thompson in *Sherer-Gillett Co. v. Long*, 318 Ill. 432, as follows:

"Uniformity in the law of the several States per-

taining to sales being deemed essential to the commercial welfare of the country, leaders of the American bar prepared and submitted to the legislatures of the several States a uniform sales act and a uniform conditional sales act.''

And in *National City Bank v. National Bank of Republic*, 300 Ill. 103, the court said of the Negotiable Instruments Act:

''In construing the act the language ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony in the law.  *  *  *  The court must take the act as it is written and should give to the words used their natural and common meaning. The law was enacted for the purpose of furnishing in itself a certain guide for the determination of all questions covered thereby  *  *  *  and, so far as it speaks without ambiguity as to any such question, reference to case law as it existed prior to the enactment is more likely to be misleading than beneficial.''

In the instant case, defendant, as a seller, claims damages from plaintiff, the buyer, amounting to the difference between the contract price and the market price because of plaintiff's nonacceptance of goods. We construe the above quoted sections of the statute to permit defendant to maintain this by plea of set-off.

Defendant's affidavit of set-off presents two contracts for the purchase of coal, one dated April 4, 1924, and the second April 23, 1924. As the parties, the quality of the coal, and the prices are identical, plaintiff argues that the contract of the earlier date is merged into the contract of April 23. It does not follow that the subject matter is identical, although both deal with coal. The argument is without merit as it is based upon the fallacious assumption that the parties could not have more than one live contract for coal at the same time. The pleadings show there were several such contracts.

The contract of April 23, 1924, provides that the delivery shall be from 18 to 30 cars per week "at the option of the seller," and it is contended that this renders the contract void for want of mutuality, in that there is no obligation on the seller to ship any coal, citing *Higbie v. Rust,* 211 Ill. 333. Cases construing contracts as imposing no obligation on the buyer or seller to perform are not in point. This contract clearly means that the seller was obligated to deliver a minimum of 18 cars per week, with an option to deliver more but not to exceed 30 cars a week. *E. S. Wheeler & Co. v. New Brunswick & Canada R. Co.,* 115 U. S. 29; *McKell v. Chesapeake & O. Ry. Co.,* 186 Fed. 39; *Consolidated Coal Co. v. Jones & Adams Co.,* 232 Ill. 326.

For the reasons above indicated, we conclude that defendant's claim of set-off was properly filed and that the court was in error in striking it. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT, P. J., dissents.

JOHNSTON, J., concurs.