# E. L. Hasler Company v. Griffing Florida Orchard Company.

## Gen. No. 13,261.

1.    COMMON CARRIER—*when may lawfully sell perishable property.* Where a consignee inexcusably refuses to receive perishable property when tendered for delivery by a carrier, such carrier may rightfully order its sale.

2.    MARKET VALUE—*what evidence tends to establish.* An actual sale made by a reliable concern of the property in question in a cause, tends to establish the market value of such property at the time of such sale.

3.    MEASURE OF DAMAGES—*when estoppel to complain of theory adopted arises.* A party cannot complain of the adoption by the court of a particular measure of damages where he has tried the cause upon the theory that the measure of damages so applied was the correct one.

Assumpsit. Appeal from the County Court of Cook County; the Hon. WILLIAM H. HINEBAUGH, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed May 13, 1907.

CHARLES A. BUTLER, for appellant.

HARRIS & DODDS, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The appellee sued appellant in assumpsit. The declaration consists of a special count and the common counts. In the special count it is averred substantially as follows:

The defendant, on June 24, 1904, at Jacksonville, Florida, bargained for and bought of plaintiff, at defendant's request, and plaintiff sold defendant a carload, 341 crates of fancy peaches and 59 crates of extra fancy peaches, at $1.70 for the former, and $1.95 for the latter, per crate, delivered by plaintiff to defendant at Chicago, to be paid for on delivery; in consideration thereof defendant promised plaintiff to accept said peaches and pay for same on delivery; plaintiff at Chicago, afterwards ready and willing, and tendered and offered, to deliver said peaches to defendant, yet defendant, contrary to promises, would not accept peaches, but refused so to do, causing plaintiff $25 expense in keeping said peaches and trying to get defendant to fulfill agreement; on July 5, 1904, plaintiff was forced to sell and resold peaches at less than agreed price at loss of $394.12 and cost of resale of $25.

The defendant pleaded the general issue.

A jury was waived by the parties and the cause was submitted to the court for trial, on certain stipulated facts and the evidence of witnesses given in open court, and the court found the issues for the plaintiff and assessed its damages at the sum of $394.12, and, after overruling the defendant's motion in arrest of judgment, rendered judgment on the finding.

It appears from the stipulation of facts that the following telegrams passed between the parties: June 24, 1904, de-

fendant to plaintiff: "Can you sell us car peaches to arrive here next week?"  Same date, plaintiff to defendant: "Will load you car peaches to-morrow adrift fancy advoke chimera ex fancy, delivered Chicago, stock two grades better than car handled."  Same date, defendant to plaintiff: "Ship car, rush, want to arrive Wednesday, Ice heavy I. C."  This telegram, when received by the plaintiff, read, "Ship car, rush, want to arrive Wednesday, ice heavy ice."  In the second telegram above mentioned, this explanation is given in the stipulation: "Word 'adrift' meaning $1.70, and word 'advoke' meaning $1.95, and word 'chimera' meaning extra fancy."  Saturday, June 25, 1904, plaintiff to defendant: "Will load you four hundred car peaches to-day."  On same day, plaintiff shipped to defendant to Chicago, by Monon route, car number 14,968, 59 crates extra fancy peaches and 341 crates fancy peaches, and June 27, 1904, wrote to defendant, inclosing bill for the peaches, amounting in all to $694.75.  Wednesday, June 29, 1904, defendant wrote to the plaintiff, acknowledging receipt of its letter of June 27, and saying, among other things, "Hope this car will be in to-morrow"; and June 30, 1904, defendant telegraphed plaintiff, "Peaches not here, better trace, can't wait for them."  July 1, 1904, the plaintiff wrote to defendant, in substance, that it had learned from the railway tracer that the car passed Louisville the morning of June 28, and they felt sure it would be in Chicago that morning, July 1, and therefore did not wire.  The car arrived in Chicago at 11:30 o'clock July 1, 1904.  The defendant refused to receive the peaches, on the ground that the car should have been in Chicago Wednesday, June 29, and that defendant had instructed to ship by the Illinois Central railroad.

It is stipulated that the car arrived in Chicago well iced and its contents in apparently good condition; that the defendant refused to receive the fruit, and the railroad company notified the plaintiff of the refusal and asked instructions, which plaintiff refused to give, and the railroad company sold the peaches for $305.65, which was $5.62 less

than the freight charges, which last sum was paid by the plaintiff to the railroad company.

Appellant's counsel contend that the contract of the plaintiff was to deliver the peaches in Chicago Wednesday, June 29, 1904. We do not concur in this view. The defendant's first telegram, of date June 24, 1904, was, "Can you sell us car peaches to arrive here next week?" June 24, 1904, was Friday, and the telegram indicated defendant's willingness to receive a car of peaches from the plaintiff any time the week next after Friday, June 24, which would include July 1 and 2. Also, on Wednesday, June 29, 1904, defendant wrote to the plaintiff, "Your letter 27th received with invoice. Hope nice car peaches, size all we want, variety all right, eating qualities all right. Impossible to get fancy prices peaches unless some size to them. Last car too small to command fancy price. Hope this car will be in to-morrow." No expression of disappointment in this letter that the car had not arrived Wednesday, but instead thereof a hope that it would arrive Thursday.

Defendant's telegram, "Ship car, rush, want to arrive Wednesday, ice heavy I. C.," is relied on by appellant's counsel in support of two propositions; first, that plaintiff was bound to deliver the peaches in Chicago by Wednesday, June 24; and, second, that it was bound to ship the peaches by the Illinois Central Railroad. Neither proposition is sound. The words "want to arrive Wednesday" merely express a wish that the car will arrive as speedily as possible, and the receipt of the telegram and shipment in pursuance thereof cannot, as we think, be construed as a guaranty by the plaintiff that the car would arrive in Chicago Wednesday. So unusual a guaranty would require proof of the most satisfactory character. When the telegram last mentioned was delivered to the plaintiff the word "ice" was substituted for the letters "I. C." in the telegram, as it was sent by the defendant. This certainly was not the plaintiff's fault. Evidence was introduced by the defendant tending to prove that it was the custom of the telegraph company to call for a repetition of a message when there is any ambiguity in it.

Hasler Co. v. Griffing Florida Orchard Co.

We cannot perceive how this can affect the plaintiff. The telegram as received by it is redundant as to the word "ice," but not ambiguous. In a communication from plaintiff to defendant of date July 6, 1904, this occurs: "Enclose copy, same reading, 'Ship car, rush, want to arrive Wednesday, ice heavy ice.' When received same, thought you were specially anxious to have car iced heavily, gave instructions on this line." We think this a very reasonable interpretation of the telegram as received by plaintiff. That it did not convey to plaintiff any instruction to ship by the Illinois Central Railroad is too plain to require argument. We do not understand counsel for appellant to contend that the car, shipped as it was by the Monon route, was unreasonably delayed. His contention is, that plaintiff was instructed to ship by the Illinois Central Railroad, and that if it had so done, the car would have arrived sooner than by the Monon route, which the evidence tends to prove, and therefore the delay was unreasonable. The argument premises that plaintiff's instruction was to ship by the Illinois Central Railroad, which we have shown to be fallacious. The car arrived in Chicago five and one-half days from the time of shipment, and the evidence is that this was not an unreasonable time. There was no delay for which the plaintiff was at all responsible. The fruit arrived in good condition and well iced, and when defendant, inexcusably, as we think, refused to receive it, the railroad company turned it over to Coyne Bros., a reliable commission firm of the city of Chicago, engaged in handling fruit, for sale, and that firm sold the fruit for $303.03, which was a little less than the freight charges, as heretofore stated. The fruit being perishable, the railroad company acted rightly in ordering its sale. 5 Am. & Eng. Ency. of Law, pp. 223 and 418.

It is contended that if plaintiff is entitled to recover, the measure of damages is the difference between the contract price and the market value in Chicago at the time of arrival, or sale, if the former was greater than the latter, and that plaintiff failed to prove the market value. The evi-

dence shows that the peaches were nearly all sold by Coyne Bros. July 6, 1904, and that Coyne Bros. was a reliable commission firm engaged in the business of selling fruit on commission, and we think the sale of the fruit in question, in the regular course of the business of the firm, evidence tending to prove market value.

Waiving the question whether the measure of damages claimed by appellant's counsel is proper in this case, we do not think appellant is in a position to object here that there was no evidence of market value. When Mr. Henry E. Coyne, account sales clerk for Coyne Bros., was on the witness stand, and was being examined as to the market value, counsel for defendant objected, saying: "I object to that; there is a contract price here." The same witness having been recalled by plaintiff, testified that the fruit was sold at the prices shown in a statement which he produced when first called, when appellant's counsel said: "Object; all that was excluded as immaterial; that it was a question of contract price only." Witness was then asked: "Will ask you if these prices were reasonable prices, and the best prices that could be obtained, under the circumstances, and at the time, for these peaches?" To this counsel for appellant objected, on the ground that the witness was not qualified as an expert, and that the evidence sought by the question was immaterial, incompetent and irrelevant. Counsel for appellant tried the case on the theory that the contract price of the fruit controlled, and that evidence of its market value when sold, or when it arrived in Chicago, was immaterial, and objected to evidence of its market value, and cannot be heard here to contend that its market value was not proved; in other words, that the record does not contain evidence which was excluded on his motion.

On inspection of the entire record, our conclusion is that substantial justice has been done between the parties, and the judgment will be affirmed.

*Affirmed.*