**Samuel W. Pass, Appellee, v. Briggs & Turivas, Appellant.**

**Gen. No. 28,065.**

1. SALES—*reinstatement of canceled sales contract.* In an action for damages for breach of a contract for the purchase of iron by the refusal of the buyer to accept further deliveries, the original contract, which had been partially performed within the time provided, is shown to have been reinstated after cancellation by the buyer for failure to deliver the undelivered portion of the iron within the contract time, by evidence that thereafter the buyer agreed to reinstate the order and to give the seller shipping instructions as soon as it was in position to take care of the material to which the seller assented, and the contract thereupon became one for purchase and sale of the undelivered balance of the order, within a reasonable time, especially where the parties thereafter so construed it.

Pass v. Briggs & Turivas, 231 Ill. App. 214.

2. SALES—*admissibility of letters between parties in action for breach of sales contract.* In an action by the seller for breach of contract of sale by the buyer, letters between the parties tending to show reinstatement of the contract after cancellation by the buyer for failure to deliver within the contract time are admissible to show such reinstatement on modified terms, notwithstanding they refer to extraneous matters, where they refer to the contract in question which is shown by undisputed evidence to have been the only contract between the parties, and there is no evidence that the subject-matter thereof was other than the contract in suit.

3. SALES—*when breach of sales contract by buyer shown as matter of law.* In an action by the seller for damages for breach of contract of sale by the buyer by refusal to furnish shipping instructions, evidence by the seller that he repeatedly endeavored, without success, to secure shipping instructions from the buyer is not contradicted so as to raise an issue of fact, where the alleged contradictory testimony contains no denial that the buyer requested shipping instructions but amounts only to a denial by the witness in question that he remembers any such conversation with plaintiff as testified to by the latter, after a certain date.

4. SALES—*ability of seller to perform shown where article sold obtainable on open market.* In an action by the seller against the buyer for damages for breach of contract to buy a particular kind of wrot-iron scrap, the seller is shown to have been ready, willing and able to perform where the evidence showed that he had the iron available for shipment at various times during the period covered by the contract, including the date of final demand by him on the buyer for shipping instructions, notwithstanding evidence that during part of the time he was unable to obtain it from the particular source from which he obtained that shipped under the contract, and it appears that the iron in question was obtainable on the open market at any time during the contract period.

5. SALES—*mutual rescission of sales contract not shown by mere inactivity of parties.* In an action by the seller for damages for breach by the buyer of a sales contract calling for delivery of the articles sold upon the furnishing of shipping instructions by the buyer, the contract is not shown to have been mutually rescinded, by evidence that after the seller had repeatedly demanded shipping instructions, which were not furnished, he remained inactive for four months before renewing the demand for such instructions, where it appears that upon renewal of demand the buyer made no claim of rescission or objection to the seller's demand or its terms, although the demand included notice that unless shipping instructions were forthcoming within seven days, the buyer would be considered as in default.

6. SALES—*sufficiency of evidence as to extent of performance of sales contract in action for breach.* In an action by the seller against the buyer for damages for breach of a contract for the purchase of 1,000 tons of iron, testimony of the seller that he shipped about 600 tons which was received and paid for by the defendant is sufficient to show the amount shipped, where it was based upon undisputed invoices issued by the company from which plaintiff bought the iron in question which was shipped direct to the buyer, although the amount was stated by plaintiff in round numbers, the invoices being excluded on objection by defendant, and plaintiff concedes the amount to have been 605 tons and that defendant is entitled to a remittitur in the amount of the excess.

7. VALUES—*market quotation in recognized trade journal as evidence of market value.* The market price of iron scrap of a particular kind may be proven by market quotations as of the date of the breach, contained in a trade journal recognized in the trade and acted on as containing accurate market information as to that commodity, either by admission of the journal or by permitting a witness to read therefrom after proper preliminary proof.

8. HARMLESS ERROR—*exclusion of document harmless where fact therein otherwise shown.* Exclusion of a recognized trade journal containing market quotations of the commodity in suit at the date of breach sued on is harmless where the witness was permitted to testify therefrom as to the market price on the date of the breach.

9. HARMLESS ERROR—*when admission of immaterial evidence harmless.* In an action by the seller for damages for breach of a sales contract by the buyer, the admission of evidence as to the market price of the commodity in suit at a date prior to the date of the alleged breach was harmless where the price at that time was not involved and the evidence formed no part of the basis for the judgment.

10. SAVING QUESTIONS FOR REVIEW—*failure to object to evidence in support of counts not covered by affidavit of claim as waiver.* In an action for damages for breach by the buyer of a sales contract under a declaration containing special counts and also a copy of the account sued on, with an affidavit of claim stating that plaintiff's demand is for the items and things as set forth "in the foregoing copy of account sued on," defendant's failure, during trial, to object to the admission of evidence in support of the special counts is a waiver of the objection that the proof is not within the issues, on appeal from the judgment.

Appeal by defendant from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed with remittitur. Opinion filed December 26, 1923. *Certiorari* denied by Supreme Court (making opinion final).

HOPKINS, STARR & HOPKINS, for appellant; EARL J. SMITH, THOMAS MCCALL and ROSWELL F. MAGILL, of counsel.

HALL & SPITZ, for appellee; Ross C. HALL and EDMUND M. SINNOTT, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff, Pass, brought this action in the superior court of Cook county against the defendant, Briggs & Turivas, to recover damages for an alleged breach of contract, under which the plaintiff had agreed to sell and the defendant had agreed to buy 1,000 tons of iron of grade known as No. 1 wrot. The plaintiff claimed that the defendant had failed to take approximately 400 tons, under that contract, and he therefore brought this suit to recover the difference between the contract price and the market price, on the date of the alleged breach, on that amount of iron. At the close of the evidence the trial court directed the jury to find the issues for the plaintiff. This was done and the plaintiff's damages were fixed at $5,740, and the court entered judgment for the plaintiff for that amount. To reverse that judgment the defendant has perfected this appeal.

It appears from the evidence in the record that the plaintiff called at the defendant's office and offered to sell to the defendant 1,000 tons of iron. This was apparently accepted by the defendant, and under date of August 17, 1920, the defendant sent the plaintiff, on one of its forms, its "confirmation of purchase," referred to as defendant's order No. 8366. This order confirmed the purchase of 1,000 net tons, No. 1 railroad wrot, at $24.60 a ton. The order contained the words "Terms, usual, * * * Delivery in 30 days. Shipping directions are being furnished by letter today, confirming verbal arrangements made with our

Messrs. Turivas and Parker. If material is not shipped on or before time specified herein, the purchaser has the privilege of canceling this contract without notice.'' Accompanying that confirmation of sale or order was a letter from the defendant to the plaintiff, directing that the material covered by this contract be shipped to the ''Interstate Iron & Steel Co., East Chicago, Ind. % I. H. B. R. R.''

Under date of September 21, 1920, the material covered by this contract not having been delivered, the defendant wrote the plaintiff as follows:

''Owing to the time expiration, we are obliged to cancel the 1000 net tons No. 1 R. R. wrot due on our order No. 8366 of August 17. Please note on your orders that no shipments of this grade are now to be accepted on this order.''

Under date of September 27, 1920, the defendant again wrote the plaintiff as follows:

''Confirming arrangements made in our office under date of September 25th, we will reinstate our orders covering the No. 1 wrot and the railroad malleable. Please arrange to have the No. 1 wrot shipped to the Interstate Iron & Steel Company, East Chicago, Indiana, for I. H. B. R. R. delivery.''

At the time the plaintiff received this communication he also received a letter from the defendant asking him to ''Arrange to issue instructions to the C. & N. W. Railroad to consign the No. 1 wrot until further advised as follows: Interstate Iron & Steel Company, East Chicago, Indiana, for I. H. B. delivery.'' It appears that the plaintiff had purchased a quantity of No. 1 wrot from the Chicago & Northwestern Railroad Company to fill this contract with the defendant. During the few days of September, following the receipt of the communication referred to, the plaintiff shipped under this contract approximately 600 tons of iron, for all of which the defendant paid the plaintiff under the contract.

On October 1, 1920, the plaintiff received a communi-

cation from the defendant reading as follows:

"Please be advised that all the shipments of No. 1 railroad wrot due on our order No. 8366 will have to be suspended for the time being. We will advise you as soon as we are in a position to take care of this material."

The plaintiff testified that during October and November and the first part of December he made a number of unsuccessful attempts to get shipping instructions from the defendant for the balance of the iron, covered by this contract.

Under date of December 17, 1920, the plaintiff received a communication from the defendant reading as follows:

"As per telephone conversation yesterday, we hand you herewith copy of letter written by us on December 7th, to the Chicago & Northwestern R. R. Co. on the subject of No. 1 wrot. This is for your information."

Inclosed with this document was a copy of a letter from the defendant to the purchasing agent of the Chicago & Northwestern Railroad, reading as follows:

"Your favor of December 5, File F-5, acknowledged with reference to the balance of No. 1 wrot you owe us on your order. As our people have refused to accept this material at the present time, we can only ask that you hold same until we furnish you new instructions for shipment.

"No bill can be entertained for your alleged loss, as you have the material and we will take same as soon as conditions are such that shipments can be taken care of by consumer."

Following this, no further shipping instructions were received from the defendant by the plaintiff and no further material was shipped under the contract sued upon.

Under date of March 29, 1921, the plaintiff wrote the defendant as follows:

"Referring to your purchase order 8366 under date

of August 17, 1920, covering 1000 tons net No. 1 rail-road wrot, you are advised that unless shipping in-structions are received on this order within seven days from date, I shall institute suit against you to recover damages sustained by virtue of your failure to comply with this contract.''

No reply was received by the plaintiff to this commu-nication, and shortly after the expiration of the period of time referred to in the letter, the plaintiff instituted this suit.

In our opinion it clearly appears from the evidence in the record that when the defendant wrote the letter of September 27, 1920, it reinstated the original con-tract between the parties with all its terms. So far as the issues involved in this case are concerned, it does not make any difference whether we consider that the reinstated contract called for the delivery of 1,000 tons of iron to the defendant within thirty days of the date the contract was reinstated or within a reasonable time. When, after the plaintiff had delivered and the defendant had received approximately two-thirds of the iron contracted for, within a few days following the reinstatement of the contract, the defendant ad-vised the plaintiff that all further shipments under the contract would ''have to be suspended for the time being,'' and that the defendant would advise the plain-tiff as soon as the defendant was in a position to take care of the material and the plaintiff, by his actions, constructively agreed to that proposition, the contract became one for the purchase and sale of the balance of the 1,000 tons then undelivered, within a reasonable time. The evidence shows that the parties repeatedly thereafter considered the contract as being in force to that effect. Among other items of evidence which are to this effect, we find the letter of the defendant to the plaintiff under date of December 17, inclosing the letter from the defendant to the Chicago North-western Railroad Company. The defendant contends that these letters should not have been admitted as they

had reference to some transaction other than the one covered by the contract involved in the case at bar. The uncontradicted evidence of the plaintiff is to the effect that he had only one transaction covering No. 1 railroad wrot, namely, his contract with the defendant and his purchase of the material with which to fulfill that contract, from the Chicago & Northwestern Railroad Company. That fact together with the fact that the defendant wrote the letter of December 17 to the plaintiff, referring to its letter to the Chicago & Northwestern Railroad Company, on the subject of No. 1 wrot, for the plaintiff's information, would seem to indicate that this correspondence did refer to the contract involved here. Furthermore, both the defendant's vice president and general manager testified upon the trial of this case, and no testimony was offered by either of them to the effect that the subject-matter of this correspondence was anything other than the defendant's contract with the plaintiff.

It is contended that the plaintiff's testimony to the effect that during October, November and the first part of December, he made a number of attempts to secure shipping instructions on the balance of this iron, but without success, is contradicted by the testimony of Mr. Parker, which gave rise to an issue of fact, and that it was, therefore, error on the part of the trial court to direct a verdict for the plaintiff. As we read the testimony of these witnesses, it is not materially in conflict. The plaintiff did say in the course of his testimony that he sought shipping instructions from Parker, and on at least some such occasions he told him that the Chicago & Northwestern Railroad Company were getting after him. We do not find that Parker denies that the plaintiff requested shipping instructions, but he did say in his testimony that he did not recall any conversation with the plaintiff after October 20, 1920, in which the latter stated that the Chicago & Northwestern Railroad Company were demanding shipping instructions. It will be seen

from the evidence on the latter point that Parker's testimony did not amount to a denial of that of the plaintiff even with respect to the urging of shipping instructions by the Chicago & Northwestern Railroad Company.

We are of the opinion that the plaintiff made out his case to the effect that he was ready, willing and able to deliver the balance of the material called for by the contract sued upon. The plaintiff testified that he had the balance of the iron called for by the contract available for delivery, both in December and in March, when he made his final demand for shipping instructions. The defendant objected to that testimony but did not specify any specific ground for the objection. It is argued that the testimony referred to was contrary to the plaintiff's own admissions. The latter were to the effect that early in December, after only approximately 600 tons of the No. 1 wrot, which the plaintiff had purchased from the Chicago & Northwestern Railroad Company, for the purpose of fulfilling his contract, had been shipped to the defendant, and no further shipping instructions had been forthcoming since the first of October, the Chicago & Northwestern Railroad Company had sold out the balance of the material to other parties. But, it does not appear that the only material with which the plaintiff could have fulfilled his contract with the defendant was that which he had purchased from the Chicago & Northwestern Railroad Company. The uncontradicted evidence is that No. 1 wrot iron is a railroad classification of wrot-iron scrap, eight inches and longer, in all shapes, and that it is a class of material which is well known in the market and in the trade. It also appears from the record that it was subject to a current market price. Thus, the uncontradicted evidence is to the effect that the plaintiff could have purchased the balance of the iron called for by this contract in the open market at any time he received shipping orders from the defendant.

So far as the record shows, the plaintiff made no demands for shipping instructions from December, 1920, until March, 1921, when he wrote the letter to which we have referred. It may be as the defendant contends, that if both parties remained inactive for a long period of time, after deliveries under this contract were suspended, at the defendant's direction, it might be taken that the contract had been mutually rescinded. But, when the plaintiff renewed his demand for shipping instructions, in March, the defendant made no claim of rescission, nor did it question in any way the right of the plaintiff to request shipping instructions for the balance of the material covered by this contract. In view of the fact that nothing had been done by either party since December, it was probably incumbent upon the plaintiff to make a formal demand for shipping instructions and to advise the defendant that the plaintiff would consider the defendant in default, unless such instructions were forthcoming within some specified reasonable time. The shipping instructions having not been furnished within the time specified by the plaintiff, and no objection having been made by the defendant to the plaintiff's demands or its terms, it must be taken that the defendant thereby declined to proceed with the contract further, and the plaintiff was within his rights in treating the defendant as in default.

The defendant contends that the record does not contain sufficient evidence to show just how much material was shipped by the plaintiff under this contract, and paid for by the defendant. In connection with his testimony the plaintiff stated that he shipped approximately 600 tons, and, while so testifying, the plaintiff had in his hands a number of documents which were marked "Plaintiff's Exhibits 9 to 21 inclusive," for identification. These were invoices issued by the Chicago & Northwestern Railroad Company to the plaintiff, covering shipments of No. 1 wrot to the Interstate Iron & Steel Company, at East Chicago, Indiana.

No contention was made that these did not cover material which the plaintiff had purchased from the Chicago & Northwestern Railroad Company to fill this contract. Nor is it contended that the material referred to in these invoices was not delivered under the contract here in suit. Each of these invoices refers to the amount of the material shipped, in pounds. The plaintiff was permitted to testify as to the amounts of each shipment, by referring to these invoices, but in giving his testimony he did not give the number of pounds but testified in round figures, giving the number of tons. The invoices were offered in evidence. The court sustained the defendant's objection to them. The plaintiff concedes that an accurate computation of the amounts of the various shipments covered by these invoices shows that instead of 600 tons being delivered to the defendant, and paid for under this contract, there was actually delivered, and paid for, 605 tons, 440 pounds. The judgment recovered by the plaintiff was on the basis of 600 tons, and it is therefore conceded that the defendant is entitled to a remittitur on the judgment appealed from to the extent of $128.41.

While the plaintiff was on the witness stand he was permitted to refer to a trade publication known as the "Iron Age." It appears that this publication which was an issue dated April 7, 1921, contained a statement of the market price of the class of material covered by this contract at that time. The plaintiff had no knowledge of what the price was apart from the information contained in the publication referred to. Referring to this publication he stated that the market price of No. 1 railroad wrot on April 5, 1921 (the expiration of the period within which the plaintiff demanded shipping instructions in his letter of March), was $10.25 a net ton. One way to prove a market price is to introduce published trade lists or publications which the testimony shows are recognized by the trade and acted on as giving accurate market information,

or after such preliminary proof to permit a witness to read therefrom. Wigmore on Evidence, vol. 3, sec. 1704. The uncontradicted testimony in the record is that the ''Iron Age'' is ''recognized in the trade and in the markets there given as the market of the commodities mentioned there.'' While that is rather meaningless as it appears in the record, it is apparent that the witness was stating that this was a trade journal recognized in the iron industry, giving current market prices of the commodities which it covered. The plaintiff offered the publication, itself, in evidence but the defendant's objection thereto was sustained. In our opinion it should have been admitted. *Acme-Evans Co. v. Hunter*, 194 Ill. App. 542. However, the plaintiff was permitted to testify from this trade journal as to what the market price of the commodity involved was on the date of the alleged breach, and in our opinion this was proper and the exclusion of the document itself was harmless. There was some testimony by a witness as to the market price of the material in question in December. It is contended that the testimony was improper and that the defendant's objection thereto should have been sustained. In our opinion, the question is immaterial, as the market price of the commodity involved at that time was not involved, and was not used as a basis of the judgment awarded the plaintiff.

The defendant further contends that the trial court erred in refusing to allow the defendant's motion for a directed verdict, and in denying the defendant's motion for a new trial, and in denying the defendant's motion in arrest of judgment, and in entering judgment on the directed verdict for the plaintiff, because the plaintiff failed to prove his case as stated in his affidavit of claim. The plaintiff filed a declaration consisting of four special counts, and also a copy of the account sued upon. The latter contains items for goods sold and delivered, money lent and ad-

vanced, money paid, money had and received, money due for interest and forbearance, labor, service and material and for balance due on account stated. Plaintiff also filed an affidavit of claim with his declaration, stating that his demand "was for those things and items as set forth in the foregoing copy of account sued on." The contention was that under this affidavit of claim the plaintiff was limited in his proof to the demand therein set forth, which, as shown by the copy of the account sued upon, was not for goods sold under a special contract which goods were not accepted. The account sued upon did not contain an item for goods bargained and sold. While it may be true that the plaintiff was limited by his affidavit of claim, as indicated by a number of decisions to which our attention has been called, including *Reddig v. Looney,* 208 Ill. App. 413; *Beckers v. City of Kankakee,* 213 Ill. App. 538; *Goddard Tool Co. v. Crown Electrical Mfg. Co.,* 219 Ill. App. 34, and *Burnham v. Roberts,* 70 Ill. 19, it appears from the record in the case at bar that the defendant made no objection during the trial of the case to the evidence submitted by the plaintiff in support of the right of action as set forth in his special counts. That proof having been offered and received without objection from the defendant, the latter may not contend in this court that the proof was not within the issues, as presented by the plaintiff's pleadings. The situation presented by this contention of the defendant, last referred to, is not one involving the insufficiency of the plaintiff's evidence, as contended by counsel for the defendant in their reply brief, but it is a situation where, according to the defendant's contention, the proof of the plaintiff, necessary to support the verdict, is broader than his pleading. While the copy of the account sued upon did not contain an item for goods bargained and sold, the plaintiff's declaration did contain special counts and although his affidavit of claim was not

broad enough to cover the special counts, the plaintiff did introduce proof, under those special counts, notwithstanding the narrow affidavit of claim which he had filed, and as the defendant permitted this to be done on the trial, without objection, it may not now be urged that the plaintiff should be limited to the issues made out by his affidavit of claim.

For the foregoing reasons the judgment of the superior court is affirmed, on condition that the plaintiff file a remittitur in this court within ten days, in the sum of $128.41, costs in this court to be paid by appellant.

*Judgment affirmed with remittitur.*

TAYLOR, P. J., and O'CONNOR, J., concur.