## Sterling-Midland Coal Company, Appellant, v. Great Lakes Coal and Coke Company, Appellee.

### Gen. No. 35,472.

48

Opinion filed March 28, 1932.

JOHN J. SHERLOCK and HAIGHT, ADCOCK, BANNING & FATHCHILD, for appellant; JOHN J. SHERLOCK and WILLIAM H. HAIGHT, of counsel.

WINSTON, STRAWN & SHAW, for appellee; CHARLES CALDERINI and J. SIDNEY CONDIT, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This appeal is by plaintiff from a judgment in favor of defendant on its claim of offset for the sum of $15,220.20. Plaintiff's claim was for coal sold and delivered. The court found (and the finding is conceded to be correct) that there was due from defendant to plaintiff on that claim $36,963.68. The defense was a claim of offset, in that, as was alleged, plaintiff refused to accept screenings which it had purchased from defendant under the terms and provisions of two

written contracts. The finding of the court was that there was due to defendant from plaintiff on the offset $52,184.08. Defendant (assigning cross errors) contends that it is entitled to recover in addition to that sum interest on that amount from April 20, 1925, until the date of judgment. The judgment represented the difference between the amounts found due to the parties under their respective claims, and that judgment plaintiff seeks to reverse by this appeal.

This cause of action is not a stranger in this court. It first reached us by appeal of defendant and is reported in 240 Ill. App. 216. The trial court held that defendant's claim of offset might not be presented by way of defense to the original suit, struck the statement of claim of offset and entered judgment for the full amount of plaintiff's demand. This court held that the trial court erred in striking the claim of offset and reversed and remanded the cause for that reason.

The cause was then tried by the court without a jury and there was a finding against defendant on its claim of offset and in favor of plaintiff for the full amount of its claim and judgment in its favor for the sum of $31,047.55. Defendant appealed to this court, where that judgment was affirmed. (249 Ill. App. 634.) Defendant applied to the Supreme Court for certiorari which was granted, and upon hearing the judgment of this court and of the municipal court was reversed. (*Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.*, 334 Ill. 281.)

Defendant's claim of offset was in substance that on April 4 and April 23, 1924, the parties entered into written contracts whereby defendant agreed to sell and plaintiff to buy certain coal screenings at prices named, but that plaintiff breached these contracts by refusing to accept the coal tendered by defendant. The defense interposed was that the coal tendered was not of the quality required. The facts which there

appeared were that at the time these contracts were entered into the Black Servant Coal Co. operated a mine known as a stripping mine in Elkville, Jackson county, Illinois, and on March 26, 1924, entered into a written contract with the H. S. Odbert Coal Co. for the sale of a certain amount of this coal to be shipped from the mine at a price of $1.20 a ton for a period beginning April 1, 1924, and ending March 31, 1925. On the same date the Odbert Coal Co. entered into a contract whereby it agreed to sell to defendant, the Great Lakes Coal & Coke Co. the same coal it had contracted to purchase from the Black Servant Coal Co. All this coal was of the kind known as screenings. On April 4, 1924, and April 23, 1924, defendant and plaintiff as a result of prior negotiations entered into contracts for the sale of certain amounts of this coal to plaintiff at the price of $1.50 a ton. These contracts were upon printed forms, and these last two contracts, unlike the contracts between the Black Servant Coal Co. and the Odbert Coal Co., contained no description of the specific quality of the coal to be delivered further than "Kind: Coal to be shipped from the stripping property of the Black Servant Co., located at or near Elkville, Jackson county, Illinois, on the Illinois Central Railroad." The contracts also provided for the size of the screenings which should be delivered. The Western Electric Co. was a large customer of the plaintiff company, and the contracts provided that the coal sold to plaintiff should be consigned to that company. In July, 1924, after complaints by the Western Electric Co., which were communicated to the defendant and by it to its vendor, the Odbert Coal Co., plaintiff refused to receive further shipments of the screenings. Defendant made a claim against its vendor, the Odbert Coal Co., for damages on account of the defective quality of the screenings delivered to it which was settled March 24, 1925, when the Odbert Coal Co. paid $5,500 for a release.

The controlling question upon the prior appeal to this court was whether the trial court had erred in admitting parol evidence tending to show that defendant had warranted the quality of the screenings to be delivered to it, and that the sale had been made by sample, and that the screenings delivered did not comply with the quality as warranted or with the sample furnished. The trial court held that by making a claim against the Odbert Coal Co. and finally settling with it, defendant made an election of remedies which precluded it from recovering on its claim of offset.

This court held that the written contracts were incomplete and that the parol evidence and the evidence as to the claim made against a settlement by defendant with the Odbert Coal Co. was properly received, and it sustained the findings of the trial court. The Supreme Court was of a contrary opinion. It held that the trial court erred in receiving the parol evidence and stated:

"It is contended by plaintiff that as this cause was tried by the court without a jury, the court would be presumed to have disregarded all incompetent evidence and to have based its findings and judgment only upon the competent evidence, and that this court is bound by the findings of fact of the Appellate Court and can only here consider questions of law. Such findings of fact, however, can be inquired into in this court where there is no evidence in the case upon which to base the findings. (*Toffenetti v. Mellor,* 323 Ill. 143.) Where a trial is had before the court without intervention of a jury, errors in the admission of evidence, if they exist, do not require a reversal where there is in the record competent evidence to justify the finding of the court. (*Merchants' Despatch Transportation Co. v. Joesting,* 89 Ill. 152; *Pratt v. Davis,* 224 id. 300.) In the instant case, however, there is no competent evidence to justify the finding of the court. The uncontradicted evidence showed the mak-

ing of the contracts, the breach thereof by plaintiff, the readiness, willingness and ability of defendant to supply the coal to plaintiff, and damage resultant to defendant by reason of plaintiff's breach of the contracts. The record shows that both the trial and Appellate Courts entirely disallowed defendant's claim for damages, and that *there was no competent evidence in the record* upon which to base the judgment of the municipal court.'' In conformity with this ruling of the Supreme Court, the trial court excluded all the evidence of defendant tending to show the alleged defective quality of the screenings delivered by defendant to plaintiff. The court also excluded the evidence offered by plaintiff tending to show the purchase by defendant from the Odbert Coal Co. and by the Odbert Coal Co. from the Black Servant mine of the screenings in question and the evidence of the claim made by defendant against the Odbert Coal Co. and settlement of the same for $5,500. Plaintiff contends that this latter evidence was erroneously excluded, while defendant contends that under the ruling of the Supreme Court the law of the case had been settled and that it would have been error to admit such evidence. Plaintiff again insists, citing *Birdsell Mfg. Co. v. Oglevee,* 187 Ill. 149; 20 Corpus Juris 3, that the court erred in excluding this evidence tending to show an election of remedies, and it urges, citing *Pittsburg, C., C. & St. L. Ry. Co. v. Gage,* 286 Ill. 213, that the Supreme Court was without power to determine an issue of fact upon which the parties were entitled to a trial by jury, and that upon the remandment of an action at law for a new trial, the views expressed in the opinion of the Supreme Court are not binding on a question of fact. Such is the law as stated in the opinion cited, but when the question arises as to whether a given state of facts raises an issue of fact or one of law, the decision of the Supreme

Court is binding upon this court, and where that court in a given case has assumed jurisdiction as a matter of law, it is not for this court to say that the Supreme Court acted beyond its jurisdiction. It is true that the opinion of the Supreme Court did not discuss the question of law raised by plaintiff upon the facts which, plaintiff contends, showed as a matter of law that defendant had made an election of remedies which precluded it from maintaining its claim of offset. This court in its opinion suggested from its viewpoint the importance of that matter as an issue of fact, and with this opinion as well as the briefs of plaintiff before it, the Supreme Court made the statement above quoted. The evidence plaintiff offered was not materially different from that which was received on the former trial, and if that evidence as a matter of law could be construed as plaintiff contends, then it seems to us the Supreme Court must have affirmed instead of reversing the judgment. As we understand the opinion of the Supreme Court, it declared this evidence when admitted on the former trial immaterial and incompetent. We must therefore hold that the trial court did not err in excluding it.

Plaintiff has also argued here at great length that the trial court erred in the matter of the assessment of defendant's damages under its claim of set-off. Upon the authority of the leading case of *Sisson v. Cleveland & T. R. Co.*, 14 Mich. 489, as approved by the text books (see Chamberlayne on Evidence, vol. 3, sec. 2099–C; Jones on Evidence, 2nd ed., vol. 4, sec. 1754; 10 R. C. L. 1167, Evidence sec. 367; 22 Corpus Juris 187; 43 A. L. R. 1192) and as approved by this court in *Pass v. Briggs & Turivas*, 231 Ill. App. 214; and *Bushnell v. Curtis*, 236 Ill. App. 89, as well as the decisions of the courts of other States, *Weigel v. Powers Elevator Co.*, 49 N. D. 867, 194 N. W. 113; *Webber v. Umback*, 125 Kan. 117, 263 Pac. 786, plain-

tiff argues that evidence which it offered as to daily quotations of prices in the Chicago Journal of Commerce should have been accepted by the court as indicating the actual value of the coal which plaintiff refused to accept at the times mentioned. The parties seem to agree that the amount of damages was to be determined in conformity with section 64 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 67 (Smith-Hurd's Ill. Rev. Stats. ch. 121½, sec. 64, p. 2580) which in its several paragraphs states in substance that the measure of damages in such cases is the estimated loss directly and naturally resulting in the ordinary course of events from the buyer's breach of contract, and that where there is an available market for the goods in question the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, "the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted."

The trial court received in evidence the daily quotations from the Journal of Commerce, and evidence as to all the actual sales of coal screenings which had been made by the Black Servant mine during the period in question was also received. Defendant also offered and the court over objections received proof of similar market transactions in other screenings. Evidence was also received as to the manner in which the quotations and trade reports of the Journal of Commerce were made up, and there was evidence tending to show that the reports did not refer to sales of the same kind of coal screenings nor amounts similar to those involved in this suit. There was evidence tending not only to impeach the source from which these were derived, but also to show that these quotations were not usually relied upon or considered trustworthy by the trade. It is true, as plaintiff points out,

that the opinion of the witnesses disclosed wide divergence as to the market price of these coal screenings at the time they should have been accepted, the different items of evidence indicating a variance of from $33,865.88 to $61,646.92. Plaintiff insists that under these circumstances this court should hold that it was the duty of the trial court to accept the prices as shown by the daily quotations in the Journal of Commerce. The price of a given article in a given market is most satisfactorily determined by what a buyer not compelled to buy would be willing to give and a seller not compelled to sell would be willing to take for a given article at a given time (*Farson v. Buder,* 187 Ill. App. 318), and the best test of a market value is the price realized from such sale (Wigmore on Evidence, vol. 1, sec. 462, p. 844; 10 R. C. L. 955; *Parmenter v. Fitzpatrick,* 135 N. Y. 190, 31 N. E. 1032; *Budd v. Van Orden,* 33 N. J. Eq. 143; *Ommen v. Talcott,* 175 Fed. 259, 260; *Northwestern Fuel Co. v. Mahler,* 36 Minn. 166). Illinois cases, numbers of which might be cited, are to the same effect (*Hasler Co. v. Griffing Florida Orchard Co.,* 133 Ill. App. 635; *Johnson v. Canfield-Swigart Co.,* 292 Ill. 101); the question of market value is a question of fact (*Chicago & Northwestern Ry. Co. v. Dickinson,* 74 Ill. 249), and where the case is tried by a judge without a jury his findings will not be disturbed unless they are clearly and manifestly contrary to the evidence (*City of Quincy v. Kemper,* 304 Ill. 303; *People v. Nagel,* 243 Ill. App. 490; *Stephens-Adamson Mfg. Co. v. Fireman's Fund Ins. Co.,* 257 Ill. App. 443).

The coal in question was purchased and delivery was to be made f. o. b. at the mines, and the trial judge who saw and heard the witnesses received evidence as to the price paid upon actual sales made at the Black Servant mine at the times in question. After listening to all the evidence and weighing it, the court

decided that these actual sales, better than any other evidence, showed the true market value. We cannot say that his finding is manifestly wrong but are disposed to approve his conclusion.

Defendant, however, earnestly contends that it is entitled to recover interest at the rate of five per cent on the amount found to be due on its offset from April 20, 1925, when the contracts were breached, until the date of judgment, and that the judgment should be modified in this court so as to include such interest. If interest should have been allowed, this would be the proper practice. *Dean & Sons, Ltd. v. W. B. Conkey Co.*, 180 Ill. App. 162; *Supreme Lodge of A. O. U. W. v. Zuhlke*, 129 Ill. 298; *Penn Plate Glass Co. v. J. H. Rice Co.*, 216 Ill. 567.

This contention requires a construction of section 2 of the Interest Act, Cahill's St. ch. 74, ¶ 2 (Smith-Hurd's Ill. Rev. Stats. 1931, ch. 74, p. 1754) which provides:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due, on any bond, bill, promissory note or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance on money received to the use of another and retained without the owner's knowledge, and on money withheld by an unreasonable and vexatious delay of payment."

In the absence of an express agreement interest at common law is not recoverable, and it is not recoverable except when authorized by the statute. *Sammis v. Clark*, 13 Ill. 544; *Fowler v. Harts*, 149 Ill. 592; *People v. Franklin Nat. Ins. Co.*, 343 Ill. 336. Defendant says that upon the first appeal this court held that the damages of defendant were liquidated and that

this is now the law of the case by which the court is bound. The question upon that appeal was whether defendant could maintain its claim of offset. The claim was stricken in the trial court. The question before this court simply arose on the pleadings. The proper construction of section 2 of the Interest Act was not involved there, and it was not considered and was not in any way necessary to a decision of the question then before this court. That decision is therefore not controlling. Neither are the cases from other jurisdictions, such as *Faber v. City of New York,* 222 N. Y. 255, 118 N. E. 609; *Demotte v. Whybrow,* 263 Fed. 366; *Miller v. Robertson,* 266 U. S. 243, and *Druckman v. Forsyth Furniture Lines, Inc.,* 22 F. (2d) 59, all of which are cited by defendant. It does not appear that the construction of section 2 of our Interest Act or a similar statute was in any way involved in any of these cases.

There is a line of cases in the Supreme and Appellate Courts of this State, such as *Norton Iron Works v. Wilson Steel Products Co.,* 232 Ill. App. 523, holding in substance that where damages are ascertainable by computation of the difference between the contract price and the market price, interest may properly be allowed. *Morris v. Taliaferro,* 75 Ill. App. 182, is also cited, but interest was allowed in that case because of a vexatious delay of payment, under which circumstances interest is granted under the statute.

In *Driggers v. Bell,* 94 Ill. 223, Bell sued Driggers for refusing to take as agreed wheat purchased at $1.50 a bushel. Bell recovered a judgment. The trial court charged the jury that if they found for plaintiff, interest might be allowed. This was assigned for error. The opinion of the Supreme Court said that it was conceded that where the price of the property was paid by the purchaser before default of the seller, the plaintiff might recover interest, but it was contended to

be otherwise where the contract price had not been thus paid. The court said, "No reason, on principle, is perceived for such a distinction," and that in either case the damages were compensation for delay in payment. The statute was not cited nor was any authority.

In *Plumb v. Campbell*, 129 Ill. 101, the plaintiff recovered a judgment for the default of defendant in taking bonds at a price as agreed. Interest was allowed, and the court held this was not error, citing *Driggers v. Bell, supra,* and *Thomas v. Wells,* 140 Mass. 517. The statute was not cited and the Massachusetts case does not cite any statute nor any other authority.

In *Murray v. Doud & Co.,* 167 Ill. 368, the plaintiff sued for damages for default of defendant in taking "bought and sold" notes as agreed, and there was an instruction that the plaintiff might have interest at five per cent on the amount found due. The court said:

"If the 'bought and sold notes' constituted a written contract, as it was held in *Memory v. Niepert, supra,* they did, under our statute interest was recoverable. Morever, the recovery of interest in a case of this character is recognized and sustained in *Driggers v. Bell,* 94 Ill. 223, and *Plumb v. Campbell,* 129 id. 101."

In *Laughlin v. Hopkinson,* 292 Ill. 80, the action was for fraud and deceit, and the plaintiff recovered a judgment for $15,000. On the trial the court had given an instruction to the effect that interest might be allowed. This was held error. The court said:

"It is therefore apparent that the damages, if any, were not only unliquidated but were wholly incapable of being ascertained by computation."

In *Smith v. Gray,* 316 Ill. 488, the plaintiff sued on a construction contract in writing, and the defendant

counterclaimed for damages for delay. It was held that interest was properly allowed on the sum due the contractor under the contract but that the instruction that the defendant might have interest on his counterclaim was erroneous, the court saying, "Such damages claimed by defendant are unliquidated damages, on which no interest is allowable under our statute."

In *Duncan Lumber Co. v. Leonard Lumber Co.,* 332 Ill. 104, the Duncan Company sued the Leonard Company, claiming that it had sold and delivered lumber to the defendant for which there was due to it $1,219.53. The defendant filed a claim of set-off with an affidavit of merits. The affidavit of merits did not dispute the liability on the claim sued on, but alleged that on February 2, 1926, the plaintiff contracted to sell and deliver to the defendant certain other lumber f. o. b. Chicago, which the plaintiff refused to deliver and which the defendant was compelled to purchase in the open market, paying therefor $3,909.92 more than the contract price, leaving the balance due the defendant, after deducting plaintiff's claim, of $2,690.39. The municipal court, on motion of the plaintiff, struck the defendant's counterclaim from the files, and defendant electing to stand by its set-off and counterclaim was defaulted and judgment was rendered against it for $1,219.53. The court held that such damages were unliquidated and might not be off-set. As we understand the statute in a case of this kind, the damages must be first liquidated, or, second, of such a nature as to be the subject of computation, otherwise interest thereon may not be allowed. The reason for the rule is that the opposite party, where the damages are neither liquidated nor subject to exact computation, is not able to ascertain the exact amount which is due and therefore is not able to make a tender of the same. The opinion of this court upon the first appeal was based simply and solely on the

pleadings. It did not purport to construe the statute on interest.

It is quite impossible, upon this record, to hold that the damages were liquidated or that the same could be ascertained by a simple and certain computation. As already indicated, defendant offered evidence tending to show seven different sums as the damages which it had sustained, and these ranged in amount from $33,865.88 to $61,646.92. The plaintiff offered evidence, which was received, tending to show that the amount of damages was only $10,730.40. Thus the parties submitted evidence tending to show eight different sums as indicating the damages sustained, and no two of these eight sums are alike. We cannot hold that such damages were liquidated or could be ascertained by an easy and certain computation.

The judgment of the trial court is affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.